IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| NATALIE KING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:25-CV-223-KFP |
| | ) | |
| TUSKEGEE UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Natalie King filed this action against Defendant Tuskegee University, alleging various claims under Title VII (Count I), the Fair Labor Standards Act (FLSA) (Count II), and Title IX (Count III). Doc. 1. The parties consented to a United States Magistrate Judge conducting all proceedings in this case through final judgment. Doc. 13.

Pending before the Court is King's Motion to Strike the Declaration of Derrick Jordan. Doc. 28. This motion is fully briefed. Upon review of the motion, the Court finds it is due to be DENIED.

Also pending before the Court is Tuskegee's Motion for Summary Judgment. Doc. 23. Upon consideration of the motion, supporting brief (Doc. 24), and evidentiary submission (Doc. 25), along with King's response and evidentiary submission (Doc. 29, 31), Defendant's reply (Doc. 32), and the applicable caselaw, the Court finds that Defendant's Motion for Summary Judgment (Doc. 23) is due to be GRANTED in part and DENIED in part.

## I.    JURISDICTION AND VENUE

Because King asserts claims under multiple federal laws, the Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Personal jurisdiction and venue are not contested, and the Court concludes that venue properly lies in the Middle District of Alabama. 28 U.S.C. § 1391.

## II.    BACKGROUND[1]

### A. Timeline of Events

King began working for the Tuskegee University Police Department (TUPD) in June 2014. Doc. 1 ¶ 9; Doc. 25-1 at 259. King rose through the ranks at TUPD, eventually becoming the Assistant Chief of Police in 2022. Doc. 1 ¶ 10; Doc. 25-1 at 37:6–12.

In May 2023, King told the University President that she was being discriminated against by her supervisor Dexter Odom, Tuskegee's CFO. Doc. 25-1 at 36:8–15; 113:1–23; 123:17–23. She complained that Odom was treating her differently than her male peers. *Id.* at 113:7–11. King explained to the University President that she "was being disregarded and not treated as a professional or an expert," and she complained that she "was not being given the things [she] needed to be successful in the position." *Id.* at 113:19–23.

In July 2023, King was appointed as Interim Chief of Police at Tuskegee. Doc. 1 ¶ 10; Doc. 25-1 at 40:4–9. That same month, King applied for the permanent Chief of Police position. Doc. 25-1 at 93:6–10. Her application indicated she held a Bachelor of

---

[1] The Court presents only those facts pertinent to resolving the Motion for Summary Judgment, and notes that these facts "are not necessarily the true, historical facts; they may not be what a jury at trial would, or will, determine to be the facts." *Cantu v. City of Dothan*, 974 F.3d 1217, 1222 (11th Cir. 2020). "[T]he facts at this stage are what a reasonable jury could find from the evidence viewed in the light most favorable to the non-moving party who was opposing summary judgment." *Id.*

Science degree in Chemical Engineering and a Master of Business Administration degree. *Id.* at 220. King testified that during her time as Interim Chief, she continued to experience discrimination by Odom, and he picked on her about "trivial matters." *Id.* at 127:1–128:1. King submitted a Title IX complaint about his gender discrimination toward her in August 2023. *Id.* at 126:21–128:4.

In October 2023, King was removed from the Interim Chief position and returned to the Assistant Chief position. *Id.* at 40:14–17. She does not know who decided to return her to her old position. *Id.* at 40:10–13. That same month, King submitted complaints internally to Tuskegee and to the U.S. Department of Education's Office for Civil Rights (OCR), alleging that she was demoted from Interim Chief to Assistant Chief in retaliation for filing a Title IX complaint against Odom. *Id.* at 253–58.[2] In response to the internal complaint, Tuskegee cabinet members put together an ad hoc committee to investigate her claims. *Id.* at 115:18–118:11.[3]

In March 2024, Tuskegee hired Terence Calloway as Chief of Police. Doc. 25-3 at 3. His bachelor's and master's degrees were in or related to criminal justice. *Id.*

On November 10, 2024, there was a mass shooting on the Tuskegee campus. Doc. 1-3 at 1. Immediately after the shooting, on or about November 11, 2024, Tuskegee relieved Calloway of his duties, and the President named his director of public safety, Frank

---

[2] The substance of King's OCR complaint is not in the record, and it appears she never produced it. Similarly, her Title IX complaint is not in the record. She testified that the Title IX complaint was the same in substance to what she reported to the University President about the CFO treating her differently because of her gender. Doc. 25-1 at 123:17–125:21, 128:23–129:7, 140:1–4.

[3] Neither party provided information about the committee's findings or whether they took any remedial steps. *See id.* at 115:15–21, 118:12–119:5.

Lee, to direct the police department.[4] *Id.*; Doc. 25-1 at 102:16–103:3, 159:15–160:7; Doc. 25-2 at 49:8–9, 49:21–50:3. Subsequently, King filed her EEOC charge. Doc. 1-3 at 1.

In December 2024, Calloway officially ended his employment as Tuskegee's Police Chief (Doc. 25-3 at 3), and Tuskegee began a national search for his replacement (Doc. 1-3 at 1). That same month, King applied for the Chief of Police position, (Doc. 25-1 at 97:14–16), and Tuskegee named Christopher Fails as Interim Chief until April 2025.[5] King resigned from the Assistant Chief role in March 2025. Doc. 25-1 at 40:18–23.

### B. King's EEOC Charge

King filed her EEOC charge on November 19, 2024. Doc. 1-3. At the time, she was employed as Assistant Chief of Police at Tuskegee. *Id.* at 1. She asserted "[o]n or about November 10, 2024, . . . the Police Chief was terminated." *Id.* King alleged, the next day,

> a national search was conducted for a Chief of Security[.] . . . However, per my job description, I should be the next in line to assume the Chief's responsibilities. Upon information and belief, I have not been selected to do so because I am female, and because I previously complained internally of sex discrimination. I believe I am being discriminated against due to my sex, female, and in retaliation [for] a protected activity, in violation of Title VII[.]

---

[4] King testified that Calloway was out of the Chief position immediately after the shooting, but Tuskegee says his separation was not official until December 11, 2024. *Compare* Doc. 25-1 at 102:16–103:3 *with* Doc. 25-3 at 5. In her deposition, King testified that "Lee assumed the position of being over the police department" when Calloway left following the shooting, but she did not know what his title was during that time. Doc. 25-1 at 102:23–103:3. The Chief position announcement shows an open date of November 20, 2024. Doc. 25-3 at 7. Based on the record, it appears that Lee only served in a position directing the police department for a limited time until Fails was named as the interim hire, but the record lacks clarity on the precise timing. *See* Doc. 25-1 at 102:16–103:9. University President Mark Brown testified that he announced Fails as the interim chief in a press conference on or about November 11, 2024 about the shooting. *Compare* Doc. 25-2 at 13:10–15:12, 19:8–15 *with* Doc. 1 ¶¶ 14–15; Doc. 1-3 at 1; Doc. 25-1 at 103:4–9.

[5] In April 2025, Joshua Phillips was hired into the permanent Chief position. *Id.* at 102:16–104:15; Doc. 25-3 at 3.

*Id.* King alleged the discrimination was a "continuing action" with both start and end dates on November 11, 2024. *Id.* The EEOC issued a right-to-sue letter on February 11, 2025. Doc. 1-4.[6]

### III.   LEGAL STANDARD

Summary judgment is appropriate when the movant establishes "there is no genuine dispute as to any material fact[,]" and they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "There is a genuine[7] issue of material[8] fact if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

When reviewing a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant[.]" *McCormich v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (per curiam). Any conflicts in the evidence are to be construed in the nonmoving party's favor. *See Bailey v. DAS N. Am., Inc.*, 473 F. Supp. 3d 1310, 1320 (M.D. Ala. 2020)[9] (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The Court "may not weigh evidence or make credibility determinations" at this stage, because that would be the function of a jury and not a judge. *Lewis v. City of Union City*, 934 F.3d 1169, 1179 (11th Cir. 2019). "The

---

[6] Plaintiff alleged that she filed a second EEOC charge, but the substance of that charge is not before the Court. *See* Doc. 25-1 at 141:12–21, 143:19–146:7; Doc. 25-4 at 2–4.

[7] An issue is "'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014).

[8] A fact is "'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1259 (11th Cir. 2004).

[9] Here and elsewhere in this Opinion, the Court cites to non-binding authority. While the Court recognizes that these cases are not precedential, the Court finds them persuasive.

mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (quoting *Haves v. City of Mia.*, 52 F.3d 918, 921 (11th Cir. 1995)).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion" and alerting the court to portions of the record that support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, once the movant has satisfied this burden, the nonmovant is similarly required to go beyond the pleadings and cite portions of the record showing the existence of a material factual dispute. Fed. R. Civ. P. 56 (c)(1)(B); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex*, 477 U.S. at 324.

The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Conclusory allegations will not defeat summary judgment. *See Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (per curiam). The plain language in Rule 56 requires the Court to enter summary judgment when the nonmoving party fails to establish an essential element in her case, "on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. In that situation, the moving party is entitled to judgment as a matter of law. *Id.* at 323.

## IV.   PLAINTIFF'S MOTION TO STRIKE

King moves to strike Derrick Jordan's declaration and related exhibits, arguing that Tuskegee did not disclose Jordan as required under Federal Rule of Civil Procedure 26. Doc. 28.

6

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Yet, "a motion to strike is a drastic remedy and is disfavored by the courts." *Schmidt v. Life Ins. Co. of N. Am.*, 289 F.R.D. 357, 358 (M.D. Fla. 2012). Accordingly, such a motion should be granted only when "the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Reyher v. Trans World Airlines, Inc.*, 881 F. Supp. 574, 576 (M.D. Fla. 1995). "It is not enough that the matter offends the sensibilities of the objecting party if the challenged allegations describe acts or events that are relevant to the action." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382 (3d ed. 2026).

Parties have a continuing duty to supplement their disclosures during discovery. Fed. R. Civ. P. 26(e). "If a party fails to . . . identify a witness as required by [Rule 26(e)], the party is not allowed to use that . . . witness to supply evidence on a motion, . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Therefore, to avoid having the evidence excluded, "the rule-breaking party must show substantial justification or harmlessness." *Griffin v. United States*, 2021 WL 4947180, at \*15 (M.D. Fla. July 30, 2021). "Substantially justified means that reasonable people could differ as to the appropriateness of the contested action." *Knight through Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 812 (11th Cir. 2017). Although the Eleventh Circuit has not defined "harmless" in this context, the drafters

of the Federal Rules believed that penalizing inadvertent omissions of witnesses known to all the parties would be "unduly harsh."[10]

King characterizes Tuskegee's failure to include Jordan in its disclosures as unfairly prejudicial, resulting in King being unable to cross-examine him. Doc. 28 at 3–4. Jordan is the Chief Human Resources Officer at Tuskegee. Doc. 25-3 at 2. Tuskegee listed Cassandra Tarver-Ross as the Chief Human Resources Officer in its initial disclosures. Doc. 28-1 at 2. But King was aware that Tarver-Ross died. Doc. 25-1 at 169:7–20. Therefore, it should be no surprise to King that Tuskegee hired someone to replace Tarver-Ross, and that her successor would be capable of testifying on behalf of Tuskegee's human resources department in the same manner Tarver-Ross would have if she was still living. Although it would have been consistent with Rule 26 obligations and good form for Tuskegee to supplement its disclosures with Jordan's name, here, King should have known that a new Chief Human Resources Officer would testify on behalf of Tuskegee about HR matters and business records.[11] *Cf. Adrian Melvin v. Grease Monkey Int'l*, 2026 WL 1662769, at *2 (M.D. Ala. June 9, 2026) (denying defendant's motion to preclude plaintiff's testimony at trial because he did not disclose himself as a trial witness under Rule 26, because defendant knew plaintiff existed and understood the significance of his testimony).

---

[10] "Limiting the automatic sanction to violations 'without substantial justification,' coupled with the exception for violations that are 'harmless,' is needed to avoid unduly harsh penalties in a variety of situations: e.g., the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties; the failure to list as a trial witness a person so listed by another party; or the lack of knowledge of a pro se litigant of the requirement to make disclosures." Fed. R. Civ. P. 37(c) advisory committee's note to 1993 amendment.

[11] According to Tuskegee, King did not seek to depose a Rule 30(b)(6) witness regarding its human resources documents. Doc. 33 at 4. King does not refute this. *See* Doc. 34 at 2, 5.

Accordingly, the Court concludes that King was not prejudiced by Tuskegee's failure to inform her that Derrick Jordan replaced Cassandra Tarver-Ross as Chief Human Resources Officer. Thus, because Tuskegee has established the omission of the witness was harmless, the motion to strike is DENIED.

## V.   PLAINTIFF'S SHOTGUN PLEADING

Plaintiff's three-count Complaint asserts Count I, titled "Discrimination on the basis of sex in [v]iolation of Title VII," Count II, titled "Failure to pay overtime in violation of FLSA," and Count III, titled "Retaliation in [v]iolation of Title IX." Doc. 1. Tuskegee moves for summary judgment "[b]ecause Plaintiff cannot identify a genuine issue of material fact on any of her claims." Doc. 24 at 1. But there's a problem with that argument—King's Complaint is a shotgun pleading, and as such neither party really knows what claims King has pleaded.

The Eleventh Circuit has filled many pages with the offenses committed on the courts and on parties by shotgun pleadings, not the least of which is the exorbitant time courts waste trying to address them. This, among their other offenses, is why they are prohibited.

> Shotgun pleadings "are flatly forbidden by the spirit, if not the letter, of [the Federal Rules]" because they are "calculated to confuse the 'enemy,' and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked." [*Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015)] (alterations adopted) (quoting [*T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1543 n.14 (11th Cir. 1985)] (Tjoflat, J., dissenting)). Besides violating the rules, shotgun pleadings also "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." [*Vibe Micro, Inc. v.*

*Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018)] (alterations adopted) (internal quotation marks omitted). We have "little tolerance" for them. *Id.*

*Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021). Pleadings are governed by Rules 8(a)(2) and 10(b), which together require some clarity and organization to federal pleading. *See* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"); Fed. R. Civ. P. 10(b) (requiring a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances").

"The 'self-evident' purpose of these rules is 'to require the pleader to present his claims discretely and succinctly, so that[ ] his adversary can discern what he is claiming and frame a responsive pleading.'" *Barmapov*, 986 F.3d at 1324 (citing *Weiland*, 792 F.3d at 1320) (quoting *T.D.S.*, 760 F.2d at 1544 n.14 (Tjoflat, J., dissenting)). And, importantly, "[t]hese rules were also written for the benefit of the court, which must be able to determine 'which facts support which claims,' 'whether the plaintiff has stated any claims upon which relief can be granted,' and whether evidence introduced at trial is relevant." *Id.* (citing *Weiland*, 792 F.3d at 1320) (quoting *T.D.S.*, 760 F.2d at 1544 n.14 (Tjoflat, J., dissenting)).

Shotgun pleadings fit into four categories. *Weiland*, 792 F.3d at 1321. The first and "most common type" of a shotgun pleading "is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* The second type of shotgun pleading is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at

10

1322. The third type of complaint fails to isolate "each cause of action or claim for relief" into different counts. *Id.* at 1323. And the fourth type of complaint "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.*

As is evidenced by the summary judgment briefing before the Court, a shotgun pleading interferes with the parties' and the Court's task of precisely identifying the claims brought, determining the evidentiary support for or against them, and assessing whether any claims are legally cognizable and can survive a summary judgment motion. *See id.* ("The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.").

King's Complaint falls into three of the four categories of shotgun pleadings. First, this three-count pleading adopts the allegations of all preceding counts into each cause of action, "causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321. As a result, factual allegations relevant to each count are buried with unrelated allegations.

For example, King's FLSA unpaid overtime claim "repeats, re-alleges[,] and incorporates" all previous 21 paragraphs of the Complaint, which includes the Title VII claim. Doc. 1 ¶ 22. Yet, only paragraph 13 appears to relate to the overtime claim. *See id.* ¶ 13. Paragraph 13 relates to a single 12-hour shift at some unidentified time during Chief Calloway's tenure. But the incorporation of all 21 paragraphs into the FLSA claim blurs

11

the focus of the overtime claim because with that reassertion, the time period alleged expands to encompass King's start at Tuskegee in 2012 until at least March 2025. *See id.* ¶¶ 6–21.

This poorly drafted pleading begs a fundamental question—what period is at issue for the overtime claim? Tuskegee's summary judgment brief argues the claim is limited to Calloway's tenure, while King's brief ignores the issue. *See* Doc. 23 at 23–24; Doc. 29 at 19–22. The answer to this question is critical to assessing any damages, among other considerations.

Equally demonstrative of the problem is King's Title IX retaliation claim, which incorporates all the preceding 30 paragraphs of the Complaint even though only one, paragraph 11, mentions her Title IX complaint. Doc. 1 ¶ 11, 31. King alleges that she complained to the University President (at some unidentified time) about Odom. *Id.* ¶ 11. She complained "of discriminatory acts taken against her[,]" and she alleges she was demoted thereafter from Interim Chief of Police and was "replaced by a former Chief of Police, a man[.]" *Id.* After complaining to the President, King alleges she complained to HR, the Title IX office, and the Department of Education Office of Civil Rights. *Id.*

Even though she dumps a barrage of allegations into this count by incorporating the 30 preceding paragraphs, King never alleges that she complained about anything other than her own discriminatory treatment. Inexplicably, or perhaps because of the sloppy pleading, King tries to repackage this claim in response to summary judgment. In her response, she claims that the Title IX retaliation claim is based on Tuskegee's actions "in response to her work as a Title IX investigator and her participation in . . . Title IX processes." Doc. 29 at

12

14. Nowhere in the 30 paragraphs smashed into Count III are there allegations regarding King's work as a Title IX investigator or her participation in Title IX processes beyond asserting her own Title IX complaint. The allegations are devoid of any connection to student-based investigation or student-based complaints.

Second, King's Complaint is of the shotgun variety "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland*, 792 F.3d at 1322. Incorporating each preceding paragraph into every subsequent cause of action exacerbates this problem. In addition to including a number of paragraphs that lack timestamps, making them so vague the Court (and Tuskegee) cannot readily discern what is at issue (*see* Doc. 1 ¶¶ 11–13, 15–18), King also includes facts that appear immaterial to the claims she attempts to assert. For example, King alleges that sometime during Interim Chief Fails's tenure, police department salaries were raised, but King's pay increase was less than the male officers' increases. *Id.* ¶ 16. King has not asserted a pay-based discrimination claim so far as the Court can discern. She also does not claim Interim Chief Fails discriminated against her. Thus, this vague paragraph appears to have no materiality to the claims she does attempt to bring.

Finally, and most evident in the summary judgment briefing, King's pleading is the third type of shotgun complaint because it fails to isolate "each cause of action or claim for relief" into different counts. *Weiland*, 792 F.3d at 1323. Again, this issue exacerbates the first. The summary judgment briefing underscores that Tuskegee has difficulty discerning what King is asserting, and King, too, does not have a clear understanding of her own

claims. The claims are vague, lumped together, and ever evolving, depending on the occasion, argument, and author.

For example, Count I is titled, "Discrimination on the basis of sex in [v]iolation of Title VII." Doc. 1 at 7. After King incorporates the preceding 18 paragraphs, she asserts the discrimination occurred "by failing and refusing to promote Plaintiff in violation of Title VII." *Id.* ¶¶ 19–20. Simple enough, perhaps. But, when? For what position? Does this alleged failure to promote relate only to the occasion[12] when she applied for the Chief permanent position? *See id.* ¶¶ 12, 20. Tuskegee believes this is the claim. *See* Doc. 24 at 9. Instead, does the failure to promote relate to every time that King was not immediately placed in the Interim Chief position when the Chief position was temporarily vacant? *See* Doc. 1 ¶¶ 12, 14, 15. This is what King explains in response to summary judgment (*see* Doc. 29 at 10–11; Doc. 32 at 2–4). The summary judgment briefing highlights how problematic this pleading is. Answering what this claim precisely asserts is critical not only to assess it substantively, but also to assess its timeliness.

Title VII claims are limited by the underlying EEOC charge (the administrative exhaustion requirement). *See E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002) (per curiam). Thus, if King did not file an EEOC charge within 180 days of the alleged discriminatory act, she is now time-barred from pursuing that claim in federal court. *See Plagianes v. Fulton Cnty. Sch. Dist.*, 2026 WL 1195531, at *2 (11th Cir. May 1, 2026) (per curiam) ("[A] plaintiff may not sue based on discrete . . . acts that occurred more

---

[12] Plaintiff only references the July 2023 application in her Complaint (Doc. 1 ¶ 12), but she testified in her deposition that she also submitted a second application in December 2024 (Doc. 25-1 at 97:14–16).

than 180 days prior to the filing of the EEOC charge."); 42 U.S.C. § 2000e-5(e)(1). If the alleged discriminatory event occurred within 180 days of her EEOC charge, but her charge did not alert the EEOC or Tuskegee to that claim, then the claim is still barred because she failed to exhaust her administrative remedies. *Gregory v. Georgia Dep't of Hum. Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (per curiam) (limiting a complaint "by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination"). The pleading is so unclear as to whether this is either a discriminatory failure to promote to permanent chief or interim chief, or both, and during what time frame, that it is difficult to assess the/each claim's timeliness and exhaustion.

Further compounding the failure to isolate each cause of action into different counts is the fact that King dumps into Count I legal conclusions alleging, for example, "continuous and repeated sex discrimination and retaliation." Doc. 1 ¶ 21. This further muddies the Title VII claim. It begins as a purported sex-based failure to promote, but also throws in "retaliation." Which is it? Wait, there's more. King also alleges in the same count that Tuskegee's "pattern and practice of sex discrimination, . . . created a hostile work environment in clear violation of Title VII." *Id.* The Complaint is devoid of any factual harassment allegations or anything that suggests severe or pervasive[13] conduct. But with the hostile work environment label thrown in, Tuskegee and the Court are left to address

---

[13] "To prevail on a hostile work environment claim, we require a plaintiff to prove five elements: (1) he 'belongs to a protected group'; (2) he was 'subject to unwelcome harassment'; (3) the harassment was 'based on a protected characteristic'; (4) the harassment was 'sufficiently severe or pervasive to alter the conditions of' his employment; and (5) his employer was 'responsible for' the hostile work environment." *Copeland v. Ga. Dep't of Corr.*, 97 F.4th 766, 774 (11th Cir. 2024) (quoting *Bryant v. Jones*, 575 F.3d 1281, 1296 (11th Cir. 2009)).

it. Thus, King's sloppy pleading has dumped yet another attempted claim into the purported sex-based failure to promote claim in Count I. The summary judgment briefing highlights the result of this mess. *See, e.g.*, Doc. 24 at 11–12, Doc. 32 at 2. Similarly, her Title IX retaliation claim (Count III) adds in an alleged "hostile work environment" without making it clear whether she is also attempting to assert such a claim. *See* Doc. 1 ¶ 35. Instead, it is more likely she threw in buzz words without care for their import. King's cornucopia-style series of claims and allegations is quintessential shotgun pleading.

The Court finds itself in an untenable situation. The case was filed over a year ago, the discovery deadline has passed, and the case is fully briefed on summary judgment. Yet, it is presented on a pleading that is "flatly forbidden." *Barmapov*, 986 F.3d at 1324. One remedy for this travesty is to *sua sponte* strike the offending pleading and send the case spiraling back to square one with a replead order. *See Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357–58 (11th Cir. 2018) ("[I]n a case in which a party . . . files a shotgun pleading, the district court should strike the pleading and instruct counsel to replead the case[.] . . . This is so even when the other party does not move to strike the pleading.") (quotations and alterations omitted). Given the complete waste of resources that would befall all involved, the Court declines to do that. Based on King's response to summary judgment, the Court can satisfactorily find, to the extent her sloppy pleading intended to assert any of the following claims, she has abandoned[14] such claims by not addressing them

---

[14] The Court can grant summary judgment on the abandonment of claims and lack of evidence. *Haves*, 52 F.3d at 921 ("A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor."); *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (quoting *Ryan v. Int'l Union of Operating Eng'rs, Local 675*, 794 F.2d 641, 643 (11th Cir. 1986); *Road Sprinkler Fitters Loc. Union No. 669 v. Indep. Sprinkler Co.*, 10 F.3d 1563,

and not providing evidentiary support: harassment, hostile work environment, deliberate indifference, pattern and practice, and any retaliation claim outside of Title IX. Thus, summary judgment is GRANTED on the aforementioned claims to the extent they have been asserted. *Haves*, 52 F.3d at 921.

While some ambiguity remains as to what was pleaded and what remains at issue, the Court can narrow the claims with the benefit of the summary judgment briefing and award judgment as a matter of law where it is due and defer the remainder to a jury. The Court finds King has asserted the following remaining claims now before the Court:

1. Title VII failure to promote claim based on her non-selection for the permanent chief position over Calloway in March 2024 and a failure to promote claim based on Tuskegee's failure to automatically place her in the Interim Chief position over Lee/Fails in November/December 2024 when Calloway was removed;

2. FLSA claim limited to Calloway's tenure and the 12-hour shift(s); and

3. Title IX retaliation claim based on her complaint that Odom discriminated against her in her employment.

As explained below, summary judgment is due to be granted on King's Title IX claim, denied on King's FLSA claim, granted on King's failure to promote claim as to Calloway's hire, and denied as to failure to promote to the interim position in November/December 2024.

---

1568 (11th Cir. 1994)) ("In opposing a motion for summary judgment, 'a party may not rely on his pleadings to avoid judgment against him.' . . . Rather the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."); *Celotex Corp.*, 477 U.S. at 323–24 ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose.").

## VII.  DISCUSSION

As it remains before the Court, in Count I, King alleges Tuskegee discriminated against her on the basis of sex when it failed to promote her to Chief. Doc. 1 ¶ 20. In Count II, King alleges Tuskegee "purposely misclassified" her as exempt under the FLSA, even though she was engaged in law enforcement activities that qualified her for overtime pay. *Id.* ¶¶ 24, 26, 28. In Count III, King alleges she was demoted in response to filing a Title IX Complaint against the CFO, to whom she directly reported. *Id.* ¶¶ 11, 32.

In its motion, Tuskegee asserts threshold defenses against King's Title VII claims. First, Tuskegee argues King's failure to promote claim is time-barred because she did not file a timely EEOC charge connected to Chief Calloway's hiring in March 2024. Doc. 24 at 8. Next, Tuskegee argues King failed to exhaust her administrative remedies because she did not put Tuskegee or the EEOC on notice of a failure to promote claim. *Id.* at 9–10. Then, Tuskegee concludes that the Calloway-based claim should fail on the merits. *Id.* at 11–13.

In response to Count II, Tuskegee argues King was properly classified as exempt. *Id.* at 19. In addition, Tuskegee claims the first responder regulation does not apply because King's primary duty was management. *Id.*

Concerning Count III, Tuskegee argues that King cannot succeed on a Title IX retaliation claim because (1) the Eleventh Circuit has not extended the implied private right of action to employment discrimination claims, *id.* at 13–14, and (2) King's Title IX claim fails on the merits, *id.* at 15–18.

### A. King failed to exhaust her administrative remedies for her Title VII failure to promote to the permanent chief position for which Calloway was selected (Count I).

Upon review of the record, the Court concludes that King's failure to promote claim is time-barred as to Calloway's hire over her.

Tuskegee argues that King failed to exhaust her administrative remedies for the failure to promote claim. Doc. 24 at 8–10. Tuskegee asserts that Calloway's hiring date in March 2024 was the only discrete act King could have raised in an EEOC charge. *Id.* at 8. Therefore, her November 2024 charge was untimely because it was filed more than 180 days after that date. *Id.* Further, Tuskegee asserts that King failed to include factual allegations about a failure to promote that would put either the EEOC or Tuskegee on notice of any other claim. *Id.* at 9–10.

In her response, King argues that Tuskegee's failure to immediately appoint her to the Interim Chief role when it became vacant after the November 2024 mass shooting was sufficient for a failure to promote claim, thus her EEOC charge was timely. Doc. 29 at 9–10. King further explains that her "actual claim" was "failure to promote to the Interim Chief position[.]" *Id.* at 12. She pleaded in her Complaint, "on or about November 11, 2024, current Tuskegee University President Mark Brown, announced the hiring of Frank Lee [and] Plaintiff was to report to Mr. Lee[.]" Doc. 1 ¶14. King alleges Lee was not a certified police officer and had no experience in law enforcement. *Id.* She pleaded that in the absence of the Chief, the Assistant Police Chief assumed the Chief's duties. *Id.* She pleaded that five men, "none of whom have more education, training, and experience than" King, had "been selected for the Chief of Police position." *Id.* ¶ 17. She incorporates these

paragraphs into her Count I failure to promote claim. *Id.* ¶ 19. The EEOC charge similarly states,

> On or about November 11, 2024, Frank Lee was hired as a Security Consultant, while a national search is conducted for a Chief of Security, and I am to report to Mr. Lee. However, per my job description, I should be next in line to assume the Chief's responsibilities. . . . I have not been selected to do so because I am female.

Doc. 1-3 at 1. King argues this was sufficient to put Tuskegee and the EEOC on notice that she was addressing the failure to promote her to the interim post as soon as the Chief was terminated on or about November 10, 2024. Doc. 29 at 10–12.

Before filing a lawsuit for employment discrimination under Title VII, a plaintiff must file an administrative charge with the EEOC. *Joe's Stone Crabs, Inc.*, 296 F.3d at 1271. For plaintiffs in Alabama, a non-deferral state, this must be done within 180 days of the last discriminatory act. 42 U.S.C. § 2000e-5(e)(1); *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001).

"An employer's failure to promote is a discrete act or single occurrence." *Stuart v. Jefferson Cnty. Dep't of Hum. Res.*, 152 F. App'x 798, 800–01 (11th Cir. 2005) (per curiam) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)). The discrete act required for a failure to promote claim is hiring another person for the role instead of the plaintiff. *See Stuart*, 152 F. App'x (reviewing three instances that other people were hired for jobs plaintiff applied for). Therefore, a plaintiff, who wants to sue their employer for hiring a person outside her protected class who is less qualified, must file an EEOC charge for failure to promote within 180 days of the alleged wrongful hire. *Id.*; *Wilkerson*, 270 F.3d 1314, 1317. A plaintiff may not sue based on a failure to promote

that took place more than 180 days before the EEOC charge was filed. *See Plagianes*, 2026 WL 1195531, at *2.

King filed her EEOC charge on November 19, 2024, for a continuing[15] action that she says began and ended on November 11, 2024. Doc. 1-3 at 1. King explained, the Chief was terminated on November 10, 2024. *Id.* Although King believed she should have been "next in line" to assume the Chief role, she stated that she was not selected based on her sex, and because she "previously complained internally of sex discrimination." *Id.*

Working backward from King's EEOC charge filing date (November 19, 2024), another person must have been selected for a Chief position sometime between May 23 and November 19, 2024, when she filed her EEOC charge. *Plaigianes*, 2026 WL 1195531, at *2 ("a plaintiff may not sue based on discrete . . . acts that occurred more than 180 days prior to the filing of the EEOC charge"); *Wilkerson*, 270 F.3d at 1317 (stating plaintiffs must file EEOC charge within 180 days of the last discriminatory act); 42 U.S.C. § 2000e-5(e)(1). Chief Calloway was hired in March 2024. Doc. 25-3. A charge based on this discrete event—Calloway's hire over King—would have to be filed within 180 days of his hire date. Instead, her charge was filed more than 250 days later on November 19, 2024.

---

[15] "The continuing violation doctrine allows the plaintiff to sue on otherwise time-barred claims if the 'defendant's actions violate a plaintiff's rights on a repeated or ongoing basis.'" *Jimenez v. United States Att'y Gen.*, 146 F.4th 972, 992 (11th Cir. 2025) (quoting *Doe as Next Friend Doe #6 v. Swearingen*, 51 F.4th 1295, 1305 (11th Cir. 2022)). However, "[t]he continuing violation doctrine cannot convert 'related discrete acts into a single unlawful practice for the purposes of timely filing.'" *Id.* Although King selected "Continuing Action" in her EEOC charge, she stated that the beginning and end dates were both November 11, 2024. Doc. 1-3 at 1. Accordingly, her EEOC charge references a discrete act—failure to promote—that is not subject to the continuing violation doctrine.

Doc. 25-3 at 3. Thus, she did not timely present her failure to promote claim regarding her non-selection over Calloway for Chief to the EEOC, and it is barred.

Because King has failed to point to evidence in support of a prerequisite for her failure to promote to the permanent Chief position, the Court concludes Tuskegee is entitled to judgment as a matter of law on this issue. *Celotex Corp.*, 477 U.S. at 323.[16]

However, her failure to promote claim as it relates to her non-selection to the interim position upon Calloway's removal (on or about November 10, 2024) was presented to the EEOC within about a week of the announcement that Lee/Fails would direct the police department in the interim.[17] Thus, this part of her Title VII claim is not time-barred.

### B. King's Title VII failure to promote to interim chief discrimination claim must go to a jury (Count I).

Tuskegee argues that King attempted to recraft her Title VII claim in response to summary judgment in a manner inconsistent with her pleading (Doc. 32 at 2–3), but that much is not clear on this muddy pleading record. As noted, King complained to the EEOC that she should have been immediately placed in the chief position, and instead a male

---

[16] The motion for summary judgment also asserts that King did not meet her burden of proof on this failure to promote claim. Doc. 24 at 11. Because this claim is barred, the Court finds it unnecessary to review its merits.

[17] As noted, *supra* n.4, the timing of the Interim position is not clear. King testified that Fails was appointed as Interim Chief about a month after Calloway was terminated. Doc. 25-1 at 102:16–103:9. This would have been about a month after she filed her EEOC charge. *Id.*; Doc. 1-3 at 1; Doc. 25-1 at 70:10–15 (estimating Fails was appointed in December 2024). The President testified it happened sooner, on or around November 11, 2024. Doc. 25-2 at 13:10–15:12, 19:8–15. The Eleventh Circuit has explained "the scope of an EEOC complaint should not be strictly interpreted." *Gregory*, 355 F.3d at 1280 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970)). The policy underlying Title VII supports reading King's EEOC charge to cover a promotion of another person to Interim Chief over her. *See Green v. Elixir Indus., Inc.*, 152 F. App'x 838, 840 (11th Cir. 2005) (per curiam) (explaining EEOC charges prepared pro se should be liberally construed). Given this fuzzy timeline, because King's EEOC charge contemplated a failure to promote to the interim role, the promotion of another in close temporal proximity reasonably falls within the charge. *See id.* at 840–41.

22

(Lee) was placed in it while Tuskegee conducted a national search. Doc. 25-1 at 259. King pleaded in her Complaint that the President announced Lee's "hiring" and directed that she report to him even though her job description provided that in the Chief's absence, the Assistant Chief assumes the duties. Doc. 1 ¶ 14. She pleaded, albeit vaguely, that five males were selected for Chief who she claims do not "have more education, training and experience" than she does.[18] *Id.* ¶ 17. Tuskegee acknowledges that "[p]resumably, [King] argues that she should have been made Interim Chief following Chief Calloway's termination, instead of Christopher Fails." Doc. 32 at n.3.

"The *McDonnell Douglas* burden-shifting framework generally applies to discrimination claims based on circumstantial evidence. *Ossmann v. Meredith Corp.*, 82 F.4th 1007, 1014 (11th Cir. 2023). "When proceeding under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a prima facie case of discrimination by showing (1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably." *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc). This creates "a rebuttable presumption of intentional discrimination." *Ossman*, 82 F.4th at 1014. "To rebut that presumption, [the defendant] needs to produce evidence of a valid, nondiscriminatory reason for terminating [the plaintiff]." *Id.* Burden-shifting aside, the

---

[18] In her deposition, King identified Anderson, Calloway, and Fails as individuals who she believed were less qualified but were named chief or interim chief over her. Doc. 25-1 at 147:17–23. She identified Lee as an individual to whom she answered, though he was not a police officer. *See id.* at 69:19–70:15, 154:17–155:2.

ultimate inquiry is whether the record establishes enough that a reasonable jury could find in favor of the plaintiff. *McCreight v. AuburnBank*, 117 F.4th 1322, 1335, 1340 (11th Cir. 2024) (explaining that, regardless of which discrimination test applies, the "final question . . . is whether a reasonable jury could infer illegal discrimination. . . . [A]ll roads lead to Rule 56—so long as a plaintiff offers enough evidence for a reasonable jury to infer illegal discrimination, her Title VII claim will survive summary judgment.").

Tuskegee has explained it has a legitimate, nondiscriminatory reason for King's non-selection for the permanent Chief role—her lack of a "Bachelor's degree in criminal justice or related area from an accredited college or university required (Master's degree in criminal justice or related area preferred)." Doc. 24 at 12; Doc. 25-3 at 3, 6; Doc. 25-1 at 94:16–96:9. King does not dispute that her Bachelor's degree is in Chemical Engineering and her Master's degree is in Business Administration. Doc. 25-1 at 16:7–22; Doc. 29 at 11–12. Tuskegee does not, however, explain King's non-selection for the interim role.

King relies on the fact that she can establish a prima facie case because (i) she was not given the interim promotion, (ii) she was qualified as evidenced by her job description providing she was to fill in during the Chief's absence and also her prior fulfillment of the interim position, and (iii) a male[19] filled the interim role. Doc. 29 at 10–11. These facts are not in dispute. She argues that "Tuskegee sets forth no reasoning regarding [her] qualifications for the position of Interim Chief." *Id.* at 12. On this record, these facts minimally establish a prima facie case, at least creating an inference of discrimination. *See*

---

[19] Lee was not a certified police officer (Doc. 25-1 at 154:9–155:2), and Fails, like King, did not have a criminal justice degree (Doc. 25-3 at 3 ¶ 8).

*Sridej v. Brown*, 361 F. App'x 31, 34 (11th Cir. 2010) (per curiam) ("A plaintiff can establish a prima facie case of failure-to-promote by showing (1) he is a member of a protected class; (2) he was qualified for and applied for the promotion; (3) he was rejected despite his qualifications; and (4) other employees, who were equally or less qualified but were not members of the protected class, were promoted."); *Oliver v. Nat'l Beef Packing Co., LLC*, 294 F. App'x 455, 457 (11th Cir. 2008) (per curiam) (explaining that establishing a prima facie case "creates a rebuttable presumption that the employer acted illegally") (internal citation and quotations omitted). Without Tuskegee's explanation, there is nothing in the record to rebut the inference and support granting summary judgment. On these facts, albeit sparce, a reasonable jury could conclude that King was not selected for the interim position because of her gender. Summary judgment must be denied on this claim.

## C. King's Title IX retaliation claim (Count III) fails as a matter of law.

In her Complaint, King alleges she filed a complaint with the Title IX office against her supervisor and was demoted thereafter. Doc. 1 ¶¶ 31–32. In its motion, Tuskegee argues "there is no private right of action under Title IX for retaliation based on a complaint of employment discrimination." Doc. 24 at 13.

Title IX was passed to provide students with protection against sex discrimination. *Joseph v. Bd. of Regents of the Univ. Sys. of Ga.*, 121 F.4th 855, 866–68 (11th Cir. 2024), *cert. granted sub nom*, *Crowther v. Bd. of Regents Univ. Ga.*, 2026 WL 1377024 (2026); *see also Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633 (1999) (holding private right of action may lie against school board for student-on-student harassment); *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 76 (1992) (concluding

25

student may seek money damages for intentional violations of Title IX). Therefore, employees at an educational institution who are retaliated against for complaining about discrimination against *students* may sue under Title IX. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 171–72, 184 (2005).

Yet, the Eleventh Circuit recently held that this implied right of action does not extend to sex discrimination in employment. *Joseph*, 121 F.4th at 869. The Eleventh Circuit observed, because Congress passed Title IX three months after it extended Title VII remedies to employees of educational institutions, it did not make sense to allow litigants to circumvent Title VII's administrative exhaustion requirement by suing under Title IX. *Id.* ("In light of the complexity of Title VII's express remedial scheme, it would be anomalous to conclude that the implied right of action under Title IX would allow employees of educational institutions immediate access to judicial remedies unburdened by any administrative procedures.").

King's Title IX retaliation claim as pleaded in the Complaint is based on employment discrimination—an alleged demotion after filing a Title IX claim for gender discrimination by her supervisor, the CFO Odom. *See* Doc. 1 ¶¶ 31–32; Doc. 25-1 at 255. She complained Odom discriminated against her by treating her differently than "any other man that was under" his purview, for "being disregarded and not treated as a professional or an expert," being deprived things she needed for success in her position, being judged more harshly, disagreeing with her over best practices for police officers, and picking on her about trivial matters. Doc. 25-1 at 113:1–115:11, 124:1–126:12, 126:21–128:1, 128:23–131:1. Accordingly, because her claim is not based on a student-based

discrimination claim and thus squarely foreclosed under Title IX as explained by the Eleventh Circuit, she cannot claim Title IX retaliation.[20] Therefore, Tuskegee is entitled to summary judgment on this claim.

### D. A jury question remains as to whether King was an exempt employee under the FLSA (Count II), limited to two years preceding this action.

King alleges she was denied overtime for shifts she worked during the time Calloway was Chief. Doc. 1 ¶ 13. Tuskegee argues that King was an exempt employee ineligible for overtime. Doc. 24 at 19. Tuskegee argues, because "[King]'s primary duty was the performance of work directly related to . . . management and general business operations[,]" she was properly classified as exempt under the FLSA's executive exemption. *Id.* Tuskegee further argues that this primary duty made King ineligible for the first responder regulation. *Id.* In response, King argues, because her primary duty was not management, the first responder regulation should apply. Doc. 29 at 21.[21]

Congress passed the FLSA to ensure workers receive a fair wage and are not subjected to excessive working hours. *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450

---

[20] In her deposition, King testified that she was retaliated against for her complaint about Odom's gender discrimination and "possibly [by Dr. Rolundus Rice] for other Title IX cases [she] had worked on" but she has "no idea" if Rice was involved in the decision to remove her from the interim role. Doc. 25-1 at 195:6–196:14, 270. This allegation regarding "other Title IX cases" (*id.* at 195:14–15) does not appear in her Complaint, and she cannot expand the claim with this vague allegation. Fed. R. Civ. P. 8(a) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"); *Weiland*, 792 F.3d at 1323 (explaining complaints must give defendants notice of the claims against them).

[21] King does not address Tuskegee's executive exemption argument in her response brief. Instead, she argues Tuskegee did not meet its burden under the administrative exemption. Doc. 29 at 20–21. In its reply brief, Tuskegee does not address King's administrative exemption argument, instead reiterating its stance that her job duties fit within the executive exemption. Doc. 32 at 7. "The employer bears the burden of proving that an employee is exempt from overtime payments." *Rock v. Ray Anthony Int'l, LLC*, 380 F. App'x 875, 877 (11th Cir. 2010) (per curiam). Therefore, because Tuskegee did not assert that the administrative exemption applies, it is not at issue here.

U.S. 728, 739 (1981). Under the FLSA, employers must pay overtime when a covered employee works more than 40 hours in a given week. *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1314 (11th Cir. 2007) (citing 29 U.S.C. § 207(a)(1)). "[T]he FLSA provides employees with a private right of action to sue their employers based on unpaid overtime." *Perez v. Owl, Inc.*, 110 F.4th 1296, 1307 (11th Cir. 2024) (citing 29 U.S.C. § 216(b)). To prevail on an unpaid overtime claim, a plaintiff must prove that (1) "she worked overtime without compensation and (2) the [employer] knew or should have known of the overtime work." *Allen*, 495 F.3d at 1314–15.

However, the FLSA exempts "employee[s] employed in a bona fide executive . . . capacity" from the overtime requirement. 29 U.S.C. § 213(a)(1). An employer seeking entitlement to the executive exemption must show the employee: (1) was compensated no less than $684 per week, (2) had a primary duty of "management of the enterprise," (3) "customarily and regularly direct[ed] the work of two or more other employees," and (4) "whose suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees [were] given particular weight." 29 C.F.R. § 541.100(a). These employees are otherwise known as exempt employees. *See Watkins v. City of Montgomery*, 930 F. Supp. 2d 1302, 1307–08 (M.D. Ala. 2013).

"These exemptions are to be 'interpreted fairly,' and the employer shoulders the burden of establishing that it is entitled to an exemption." *Vickery v. City of Roswell*, 2024 WL 4504999, at *4 (N.D. Ga. Aug. 9, 2024) (citing *Ramirez v. Statewide Harvesting & Hauling, LLC*, 997 F.3d 1356, 1359 (11th Cir. 2021)). "Summary judgment based on the executive exemption is appropriate only where the four prongs of the 'executive

28

exemption' test are met as a matter of law." *Holt v. Jefferson Cnty. Comm. for Econ. Opportunity*, 2019 WL 1239855, at \*9 (N.D. Ala. Mar. 18, 2019) (quoting *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 678 (11th Cir. 2009) (per curiam)). Construing the executive exemption narrowly,[22] the Court concludes that there is a question of material fact over whether King was properly classified as an exempt employee.

### 1. King was compensated more than $684 per week.

The first prong the Court must consider is whether King was compensated at least $684 per week. 29 C.F.R. § 541.100(a)(1). King's salary as Assistant Chief began at $68,000 and increased to $90,000. Doc. 25-1 at 39:6–10; 47:18–21. The parties agree that King's pay exceeded $684 per week. Doc. 24 at 20; Doc. 29 at 21.

### 2. King's primary duty was management, and she customarily and regularly directed more than two employees.

The next two prongs can be reviewed together—(i) whether King's primary duty was management and (ii) whether she customarily and regularly directed more than two employees. 29 C.F.R. § 541.100(a)(2)–(3). In its motion, Tuskegee points to the Assistant Chief job description to argue that King's duties encompassed many management functions. Doc. 24 at 20–21. In response, King asserts that her primary duty "was not

---

[22] Courts in the Eleventh Circuit must interpret FLSA provisions "liberally in the employee's favor" and construe exemptions "narrowly against the employer." *Rock*, 380 F. App'x at 877; *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1269 (11th Cir. 2008); *see also Nicholson v. World Bus. Network, Inc.*, 105 F.3d 1361, 1364 (11th Cir. 1997) (explaining that courts must apply FLSA exemptions according to their plain meaning and Congressional intent, because "[t]o read the FLSA blindly, without appreciation for the social goals Congress sought, would also do violence to the FLSA's spirit"); *Keith v. Univ. of Mia.*, 437 F. Supp. 3d 1167, 1172 (S.D. Fla. 2020) (citing the Supreme Court's directive that the FLSA is "remedial and humanitarian in purpose," therefore its protections "must not be interpreted in a narrow, grudging manner").

management." Doc. 29 at 21. She viewed "[a]cting as a police officer"[23] as the "most important job function as Assistant Chief." Doc. 25-1 at 61:4–6.

"The term 'primary duty' means the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). Determining an employee's primary duty requires assessing "all the facts in the particular case, with the major emphasis on the character of the employee's job as a whole." *Id.* Relevant factors include but are not limited to:

> the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

*Id.* Performing nonexempt work will not by itself convert an exempt employee into a nonexempt employee—the primary duty controls. 29 C.F.R. § 541.106. Time alone does not indicate primary duty; employees who spend more than half their time on nonexempt duties "may nonetheless meet the primary duty requirement if the other factors support such a conclusion." 29 C.F.R. § 541.700(b).

At Tuskegee, the Assistant Chief bore significant management responsibilities over the police department as a whole. The Assistant Chief assumed command of the department when the Chief was absent. Doc. 25-1 at 209. The Assistant "assist[ed] in planning, direction and staffing of departmental activities and functions." *Id.* The Assistant Chief supervised all police officers, security officers, and lieutenants. *Id.* at 54:22–55:19. The

---

[23] King noted a staffing issue at TUPD. "If someone called in while I was there, we were always short-staffed. So I was always listening to the radio and responding to calls." Doc. 25-1 at 77:16–19.

30

Assistant Chief "maintain[ed] departmental records and reports" (*id.* at 209), and monitored officer training compliance (*id.* at 61:7–63:3). King also stated that she entered timesheets and performed payroll responsibilities for the department. *Id.* at 65:13–19. She was also periodically involved in hiring and firing of police officers. *Id.* at 71:18–21, 73:22–74:1. She recommended certain equipment for the department before the CFO. *Id.* at 74:22–75:23. She scheduled officers' shifts. *Id.* at 92:2–4. She gathered information for the annual crime reports. *Id.* at 88:9–89:10. The Assistant Chief also liaised with groups outside the police department. *Id.* at 209.

Not all of King's tasks were managerial. She served as a Title IX investigator, frequently went on patrol, prepared offense and investigative reports, and conducted investigations and arrests. *Id.* at 50:16–51:8; 76:19–77:3. King was also available to police any special events at the university. *Id.* at 57:14–20. Yet, engaging in patrol duties by itself does not indicate that a police officer's primary duty is not management. *See Stephens v. City of Helen*, 2024 WL 1007651 at *19 (N.D. Ga. Feb. 2, 2024) (explaining that a police chief who performed patrol officer duties when the department was short staffed or needed extra officers for special events still engaged in management as his primary duty because he scheduled officers, ran shifts, oversaw inventory, and engaged in hiring, firing, and promotional decision-making).

The Court finds *Stephens* informative because according to King, like the department in *Stephens,* TUPD was "always short-staffed." Doc. 25-1 at 77:16–19. In *Stephens*, the police chief was not rendered a nonexempt employee simply because he helped address a personnel shortage by performing patrol officer duties. 2024 WL 1007651

31

at *19. Likewise, even though King was available to assist with patrol officer duties in a chronically understaffed department, because the overwhelming nature of her role was managerial, the evidence demonstrates that her primary duty was nonetheless management.

### 3. A genuine issue of material fact remains as to whether King's employment suggestions and recommendations were given particular weight.

In its motion, Tuskegee relies on King's testimony to argue that her "expected job duties" included "interviewing applicants, making hiring, promotion, and termination recommendations, and evaluating employees." Doc. 24 at 23. Therefore, Tuskegee asserts "her recommendations involving an employee's status were given such weight as to exempt her from overtime." *Id.*

The final prong asks whether the employee's "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a)(4). The Court considers the following non-exclusive factors to determine whether an employee's suggestions and recommendations are given "particular weight":

> whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon.

29 C.F.R. § 541.105. Suggestions and recommendations may still have been given "particular weight" in cases where "a higher level manager's recommendation ha[d] more importance" or when "the employee does not have authority to make the ultimate

32

decision." *Id.* "'[O]ccasional suggestion[s]' regarding a coworker don't count." *Miller v. Travis Cnty., Tex.*, 953 F.3d 817, 820 (5th Cir. 2020) (quoting 29 C.F.R. § 541.105)).

The evidence supports a finding that it was part of King's job duties to make employment suggestions and recommendations. Additionally, King testified that she was involved in the hiring process at least "sometimes," for example, when the Chief or Interim Chief and Human Resources "brought [her] in" to the process. Doc. 25-1 at 71:18–72:16. She would recommend terminations to the Chief of Police and Human Resources. *Id.* at 73:22–74:8. She would also recommend disciplinary action "in some cases." *Id.* at 68:10–14. However, it is unclear how frequently she made such recommendations.

Courts weigh the third factor—how often the employee's recommendations are relied upon—heavily. *See, e.g.*, *Madden v. Lumber One Home Ctr., Inc.*, 745 F.3d 899, 904 (8th Cir. 2014) (reviewing caselaw in three circuits). Courts in this Circuit generally conclude that a plaintiff's suggestions or recommendations have "particular weight" when there is evidence that their opinions are followed.[24] The record here is lacking as to whether King's recommendations were followed. King did not testify about whether her hiring recommendations were followed. When asked whether her termination recommendations

---

[24] *See White v. Dixie*, 741 F. App'x 649, 663 (11th Cir. 2018) (per curiam) (affirming 'particular weight' prong was satisfied because plaintiff selected candidates for interviews and forwarded qualified candidates to his superior); *Lopez v. Salma Elfaki, M.D., P.A.*, 2017 WL 6947415, at *3 (M.D. Fla. Nov. 14, 2017) (finding defendant failed to show plaintiff's suggestions were given particular weight in part by failing to produce any evidence about the frequency plaintiff's suggestions were relied upon); *Barreto*, 331 F. App'x at 677 (concluding that even a single example that an employer followed an employee's recommendation may be insufficient to establish such recommendations were given particular weight); *Merritt v. Escambia Cnty., Fla.*, 2017 WL 1147462, at *5 (N.D. Fla. Mar. 25, 2017) (denying summary judgment for defendant who failed to produce any evidence showing plaintiff's recommendations were followed); *Langston v. Lookout Mountain Cmty. Servs.*, 775 F. App'x 991, 1000 (11th Cir. 2019) (per curiam) (awarding summary judgment for defendant who produced evidence that it followed plaintiff's recommendations about hiring at least three individuals and not hiring at least one individual).

were "typically accepted or agreed with," she responded, "I wouldn't say typically." Doc. 25-1 at 74:14–21. Finally, King testified that at least two chiefs generally did not accept her recommendations about potential disciplinary action. *Id.* at 69:9–16.

"[T]his element of the executive exemption does not require courts to ask whether an employee's recommendations as to personnel decisions were accepted every single time." *Holt v. City of Battle Creek*, 925 F.3d 905, 912 (6th Cir. 2019). Even in cases where a plaintiff's recommendations are not followed, they still should have played an important role in personnel decision-making,[25] and their opinions should have been taken seriously if the employee is to qualify for exempt status.[26]

Tuskegee has not put forth evidence supporting that King had an important role in personnel decision-making or that her opinions were taken seriously. "The overtime exemptions under the FLSA are to be applied only to those employees who are 'plainly and unmistakably' within the terms and spirit of the Act." *Watkins v. City of Montgomery*, 919 F. Supp. 2d 1254, 1257 (M.D. Ala. 2013) (quoting *Phillips, Inc. v. Walling*, 324 U.S.

---

[25] *See Holt*, 925 F.3d at 912 (highlighting plaintiffs "played a 'significant role' in hiring decisions"); *Lovelady v. Allsup's Convenience Stores, Inc.*, 304 F. App'x 301, 306 (5th Cir. 2008) (per curiam) (affirming summary judgment for defendants because plaintiffs' "recommendations were almost always followed"); *see also Madden*, 745 F.3d at 904 (concluding upon review of caselaw in three circuits that "more than informal input, solicited from all employees, is needed"); *Rooney v. Town of Groton*, 577 F. Supp. 2d 513, 532 (D. Mass. 2008) (finding no jury question existed because plaintiff police lieutenant "played an integral role in the hire and promotion process on multiple occasions").

[26] *Hicks v. Mercedez-Benz United States Intern., Inc.*, 877 F. Supp. 2d 1161, 1180 (N.D. Ala. 2012) (finding recommendations were given particular weight because promotion opinions were given "significant weight," negative performance evaluations prevented employees from being promoted, and plaintiffs could initiate corrective performance reviews at their discretion); *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 885 (8th Cir. 2016) (quoting *Madden*, 745 F.3d at 906) (explaining purported executives' input should have more influence than hourly employees' input); *Rainey v. McWane Inc.*, 314 F. App'x 693, 696 (5th Cir. 2009) (per curiam) (affirming summary judgment on particular weight prong because plaintiffs exclusively evaluated provisional workers and made recommendations as to their permanent hiring).

490, 493 (1945)). It is not enough to put forward evidence of King's job description, which may include some hiring, firing, advancement, promotion or any other employee-status change duties. The particular weight assessment tests the reality and frequency of the execution of the relevant tasks. Here, although King may have been engaged primarily with managing TUPD, it is not clear whether her suggestions regarding employee status were given particular weight.

Accordingly, because Tuskegee has not produced evidence showing whether or how frequently it followed King's employee-status recommendations, Tuskegee has not met its burden of showing that it is entitled to summary judgment because of a lack of genuine dispute as to a material fact on this claim. *See Bacon v. Eaton Corp.*, 565 F. App'x 437, 440–41 (6th Cir. 2014) (reversing summary judgment where plaintiffs worked in supervisory roles but the evidence did not clearly show their recommendations regarding employee status were given particular weight).

### 4.  The first responder regulation does not apply.

In her Complaint, King alleged her "duties as a law enforcement officer" excepted her from the exemption rules such that Tuskegee was required to pay her overtime (the first responder regulation). Doc. 1 ¶ 28. In its motion, Tuskegee argues, because King's primary duty was "directly related to . . . management or general business operations . . . , she was properly classified as exempt" and thus ineligible for the first responder regulation. Doc. 24 at 19. In response, King argues that a reasonable jury could find that her primary duty was nonexempt police work, which would make her eligible for overtime under the first responder regulation. Doc. 29 at 20–21.

35

Police officers engaged primarily in routine police work,[27] "regardless of rank or pay level," are excepted from the executive exemption by operation of the first responder regulation. 29 C.F.R. § 541.3(b)(1), (2). In other words, police officers whose primary duty is neither "management of the enterprise," nor "directly related to the management or general business operations" are entitled to overtime pay. *Id.*

Tuskegee argues, because King's primary duty related to management or general business operations, she was not entitled to the first responder regulation. Doc. 24 at 19. King refutes that her primary duty was management because she also worked as a patrol officer on a daily basis. Doc. 29 at 21.

The Court concluded King's primary duty was management because she bore significant management responsibilities over the police department as a whole. *See supra* (detailing King's tasks such as liaising with external groups, scheduling staff, maintaining department records, monitoring officer training compliance, assisting with department-wide planning, assuming command in Chief's absence, and recommending equipment for the department). The Court also concluded that King's patrol duties under these facts do not convert her primary duty to nonexempt (non-management) because she was assisting a chronically understaffed department. *See Stephens*, 2024 WL 1007651 at *19 (explaining that police chief who performed patrol officer duties when the department was short staffed or needed extra officers for special events still engaged in management as his primary duty

---

[27] Applicable tasks include but are not limited to "preventing or detecting crimes; conducting investigations or inspections for violations of law; performing surveillance; pursuing, restraining and apprehending suspects; detaining or supervising suspected and convicted criminals, including those on probation or parole; interviewing witnesses; interrogating and fingerprinting suspects; preparing investigative reports; or other similar work." 29 C.F.R. § 541.3(b)(1).

because he scheduled officers, ran shifts, oversaw inventory, and engaged in hiring, firing, and promotional decision-making). Therefore, because King's primary duty was management, the first responder regulation does not apply here. 29 C.F.R. § 541.3(b)(2); *see also Freeman v. City of Mobile, Ala.*, 146 F.3d 1292, 1297 (11th Cir. 1998) (explaining lieutenants and sergeants conceded their primary duty was management); *Watkins*, 919 F. Supp. 2d at 1263 (denying summary judgment because a jury question remained as to whether the executive exemption and first responder regulation applied); *Vickery*, 2024 WL 4504999, at *5 (quoting *Watkins*, 919 F. Supp. 2d at 1263) ("The first responder regulation does not supplant the executive and administrative exemptions, but instead 'must be applied "in conjunction with"' the exemptions.")).

### 5. King's unpaid overtime claim is limited by the two-year statute of limitations.

In her Complaint, King alleged Tuskegee was aware of FLSA requirements and "purposefully misclassified [her] as exempt." Doc. 1 ¶¶ 24, 27. Therefore, she seeks overtime pay from the three years preceding this action. *Id.* ¶ 25. Tuskegee argues that King failed to meet her burden of proof on willfulness, so her claim is limited to two years preceding this action. Doc. 24 at 24–25. King responds, "Tuskegee exhibited confusion in explaining the regulations to [King]" in her deposition, therefore she asserts it had "insufficient knowledge" of the applicable laws, showing that they never considered whether she might be exempt under the FLSA. Doc. 29 at 22.

"The statute of limitations for claims seeking unpaid overtime wages generally is two years, but if the claim is one 'arising out of a willful violation,' another year is added

to it." *Alvarez Perez*, 515 F.3d at 1162 (quoting 29 U.S.C. § 255(a)). "To establish that the violation of the Act was willful in order to extend the limitations period, the employee must prove by a preponderance of the evidence that his employer either knew that its conduct was prohibited by the statute or showed reckless disregard about whether it was." *Id.* at 1162–63 (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). The regulations define "reckless disregard" as "the failure to make adequate inquiry into whether conduct is in compliance with the Act." 5 C.F.R. § 551.104. Accordingly, the bar for willfulness is low—"[a] willful violation may be found when the employer disregarded the very possibility that it was violating the statute." *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1324 (11th Cir. 2007) (quoting *Alvarez v. IBP, Inc.*, 339 F.3d 894, 908–09 (9th Cir. 2003)).

In support of her claim that Tuskegee lacked knowledge of overtime requirements, King references her testimony that she met with the HR director multiple times to discuss her exempt status. Doc. 29 at 22 (citing Doc. 25-1 at 109:22–23). However, in her deposition testimony, she does not go into the details of these meetings, only referencing them vaguely. Doc. 25-1 at 111:17–112:10. When asked what was discussed at the meetings, she testified, "we discussed my job classification as exempt, and overtime and holiday pay, if I'm not mistaken." *Id.* at 110:9–13. She further explained that she conveyed her perspective—"I wanted to know why I was classified as exempt when that position didn't have to be." *Id.* at 110:17–19. However, she did not testify about anything that the HR director said or did in the meetings beyond stating, "I want to say [HR] said that even exempt employees can receive holiday pay." *Id.* at 111:5–7.

38

To the extent King remembered what happened at those meetings, she testified she did not receive "a definitive response or explanation." *Id.* at 111:12–16. However, this alone does not show, by a preponderance of the evidence, that Tuskegee failed to make a determination about her exempt status. *See LaPorte v. Gen. Elec. Plastics, Bus. Grp. Burkville, Ala.*, 838 F. Supp. 549, 558 (M.D. Ala. 1993) (ruling that a failure to make an effort to determine whether a policy violated the FLSA would be reckless). This testimony alone does not provide enough facts to show Tuskegee "fail[ed] to make adequate inquiry into whether [its] conduct is in compliance with" the law, 5 C.F.R. § 551.104. Her testimony does reflect a discussion with HR, recognition by HR that she was classified as exempt, and a discussion about holiday pay in that exempt status. She does not point to any evidence that shows Tuskegee "disregarded the very possibility that it was violating the statute." *Allen*, 495 F.3d at 1324; *see Alvarez Perez*, 515 F.3d at 1167 (examining testimony by accountants who were familiar with the defendant companies, stating they reached out for advice from a lawyer and a payroll company); *Morgan*, 551 F.3d at 1280–81 (affirming jury finding on willfulness because plaintiffs presented "testimony from [defendant's] executives that it never studied whether [plaintiffs] were exempt employees," and that defendant had a company-wide policy that people in plaintiffs' position were exempt, "but they had no idea who made that policy").

Accordingly, King has not shown a basis in law or fact supporting a conclusion that Tuskegee engaged in a willful violation triggering a three-year statute of limitations. *Alvarez Perez*, 515 F.3d at 1162. Therefore, King's unpaid overtime claim is limited to hours worked between March 21, 2023, which is two years before this action was filed

(Doc. 1), and March 31, 2025, her last day at Tuskegee (Doc. 25-1 at 40:21–41:1).[28] 29 U.S.C. § 255(a).

### 6. On this record, Tuskegee has not established it would be entitled to the good faith safe harbor from liquidated damages.

Tuskegee argues that "liquidated damages are inappropriate because [it] acted in good faith based on its reasonable belief that the executive exemption applied to an Assistant Chief of Police." Doc. 24 at 25. King responds, "Tuskegee wants superheroes but will only pay them for operating from 9–5." Doc. 29 at 22. She believes that "[i]t is difficult to comprehend" that she was still an executive given her patrol duties. *Id.*

When the jury finds an employer has violated the overtime provision of the FLSA and assesses compensatory damages, the district court generally must add an award of liquidated damages in the same amount, which doubles the total damages awarded." *Alvarez Perez*, 515 F.3d at 1163 (citing 29 U.S.C. § 216(b)). "However, the court may use its discretion to deny liquidated damages if an employer can establish that it acted in good faith and based on a reasonable belief that its conduct was in compliance with the FLSA." *Ingram v. Passmore*, 175 F. Supp. 3d 1328, 1333 (N.D. Ala. 2016) (citing 29 U.S.C. § 260); *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1272 (11th Cir. 2008) (explaining that the FLSA good faith defense operates as a safe harbor provision for employers).

Employers "carr[y] the burden of proving [their] entitlement to the safe harbor" from liquidated damages. *Rodriguez*, 518 F.3d at 1272. The employer must establish

---

[28] The Court notes, however, that King was not in the Assistant Chief Position during this entire period. Thus, any potential recovery would be further limited to the period(s) in which she served in this position and worked overtime.

subjective good faith—that it "ha[d] an honest intention to ascertain what the FLSA requires and to act in accordance with it." *Friedman v. S. Fla. Psychiatric Assocs., Inc.*, 139 F. App'x 183, 185 (11th Cir. 2005) (per curiam). The employer must also establish objective good faith—it "had reasonable grounds for believing its conduct comported with the FLSA." *Id.* at 185–86. Accordingly, employers have a duty to investigate whether employees are entitled to overtime. *Id.*; *Reich v. Dep't of Conservation & Nat. Res., State of Ala.*, 28 F.3d 1076, 1082 (11th Cir. 1994) (quoting *Gulf King Shrimp Co. v. Wirtz*, 407 F.2d 508, 512 (5th Cir. 1969)[29] (explaining that courts "need only inquire whether . . . the employer either had knowledge [of overtime hours worked] or else had 'the opportunity through reasonable diligence to acquire knowledge'")).

Reviewing the evidence, it appears Tuskegee "barely attempts to demonstrate good faith." *P&k Rest. Enter., LLC v. Jackson*, 758 F. App'x 844, 849 (11th Cir. 2019) (per curiam). Tuskegee rests on its argument that, because "the Assistant Chief performed a significant number of duties falling within the management realm," it reasonably and in good faith believed that the position was exempt. Doc. 24 at 25. Tuskegee does not cite evidence in the record showing that it investigated the overtime rules, or reached out to anyone for legal advice on this issue. Tuskegee did not address King's meeting with HR in its brief or offer evidence of the contents of that meeting or any investigation following the meeting. *See* Fed. R. Civ. P. 56(c)(1)(A) (explaining movant must support assertions by citing to the record).

---

[29] Opinions issued by the former Fifth Circuit prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

Given this baren record, Tuskegee has not yet established it acted in good faith. Therefore, the Court cannot conclude at this stage whether Tuskegee would be entitled to the good faith safe harbor from liquidated damages, in the event a jury finds it liable for overtime.

## VI.    CONCLUSION

Accordingly, for the reasons set forth above, it is

ORDERED Defendant's Motion for Summary Judgment (Doc. 23) is GRANTED as to Count I failure to promote regarding the permanent Chief position in March 2024 and DENIED as to failure to promote to the interim position in November/December 2024, DENIED as to Count II, and GRANTED as to Count III. It is further

ORDERED Plaintiff's Motion to Strike (Doc. 28) is DENIED.

Done this 15th day of June, 2026.

_____
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE